IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| TULANI WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:18-CV-020-A |
| | § | |
| TARRANT COUNTY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion, supplement to motion, and second supplement to motion of defendant, Tarrant County, Texas, for summary judgment. The court, having considered the motion and its supplements, the response of plaintiff, Tulani Washington, the reply, the record, including the summary judgment evidence, and applicable authorities, finds that the motion (as supplemented) should be granted.

I.

### Plaintiff's Claims

The background of this action is described in the court's April 17, 2018 memorandum opinion and order. Doc.[1] 15. The only remaining claims are asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and under chapter 21 of the Texas Labor Code for failure to promote based on race discrimination.

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

As previously recited, plaintiff was employed by defendant in the district attorney's office, prosecuting misdemeanor crimes. She was not promoted. She resigned in January 2017.

II.

Grounds of the Motion

Defendant seeks judgment on the grounds that plaintiff cannot establish a prima facie case of race discrimination and, even if she could, she cannot show that defendant's reason for failing to promote her was a pretext for discrimination. Doc. 18 at 1-2.

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit
(continued...)

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The summary judgment record establishes without genuine dispute the following:

Plaintiff is an African-American female. She was employed by defendant as an assistant criminal district attorney misdemeanor prosecutor (Attorney I Grade 72) from July 20, 2015, until she resigned on January 18, 2017. Doc. 20 at DA 186, 203-04, 209. Her supervisors were Lloyd Whelchel ("Whelchel"), section chief of the misdemeanor section, and Melinda Westmoreland, deputy chief of the misdemeanor section. Id. at DA 012.

Whelchel counseled plaintiff several times about working with others,[3] asking her to leave her door or blinds open. Doc. 20 at DA 013. He also counseled her about responding to defense attorneys and completing follow-up work that needed to be done,

---

[2](...continued)
explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

[3]Part of plaintiff's job was to help train newer attorneys, but plaintiff did not think so. Doc. 43 at PA 100.1.

4

like calling victims and witnesses in a timely manner. Id. at DA 014. Plaintiff maintained a messy office and had poor time management, organization and communication skills. Id. at DA 013, 025. Investigators complained about her poor communication skills. Id. at DA 013, DA 026. One of them met with her to give advice on being more organized. Id. He observed that her failure to notify witnesses that they were not needed for trial was causing unnecessary inconvenience to them and disruption to their work schedules. Id. at DA 240. He gave her a spreadsheet he had developed to track people served for trial and offered to show her how to use it, but she did not seem interested and he never received any indication that she used it. Id.

As part of his duties as section chief, Whelchel prepared a performance appraisal of plaintiff. Doc. 20 at DA 018, 021-22. In early November 2016, Whelchel and Westmoreland met with plaintiff to discuss her performance appraisal and areas in which she needed to improve. Doc. 31 at DA 022, 060. In particular, they discussed in depth the need for good communications with defense attorneys, such as promptly returning calls and emails, and professionalism in dealing with them.[4] Id. By that time,

---

[4] The reference in the performance appraisal to the need to communicate and not become frustrated arose out of a trial in which plaintiff lost her temper and yelled at a defense attorney, Doc. 20 at DA 018, and cursed and threw things in her office and said she was too mad to talk to the defense attorney, id. at DA 026.

Westmoreland recommended that plaintiff be terminated, Doc. 20 at DA 026, but Whelchel decided to give her another chance, id. at DA 027; Doc. 31 at DA 060. On November 9, 2016, plaintiff was on the promotion list as number 10 of 12 to be promoted. Doc. 43 at PA 4.

On December 6, 2016, Larry Moore ("Moore"), chief of the criminal division, emailed Whelchel to ask whether plaintiff and another prosecutor were still the next in line to be promoted. Id. at PA 6. Whelchel responded that they were. Id. Almost immediately thereafter, Whelchel was approached by a defense attorney who complained that he had been trying to get a response from plaintiff for months regarding a plea agreement but she would not respond. Doc. 31 at DA 022. (The failure to respond to this attorney had been discussed with plaintiff in the meeting regarding her performance appraisal. Id. at DA 022.) Whelchel and Westmoreland met with plaintiff and determined that she did not have a good reason for failing to get in touch with the defense attorney as she had been instructed to do. Id. at DA 022-23, 060. Whelchel and Westmoreland then met with Moore to discuss their concerns about plaintiff. Id. at DA 023, 060. As a result, plaintiff's promotion was placed on hold. Id. at DA 006.

Around the same time in December, the court coordinator for the court to which plaintiff was assigned again complained that

plaintiff was not properly handling her cases, which was causing delays. Doc. 31 at DA 023. The coordinator was having to email plaintiff to remind her of things that needed to be done on her cases, something she had not ever regularly had to do with any other prosecutor. Id. at DA 073.

In early January 2017, plaintiff was sitting second chair with a new prosecutor in a case where the judge granted a motion to suppress evidence in a DWI case. Doc. 20 at DA 017. Plaintiff failed to work up the case and to sufficiently assist the new prosecutor. Id. at DA 017-18. At that point, Whelchel determined that plaintiff was not going to be able to do what was expected. Id. at DA 018, 020; Doc. 31 at DA 023. Whelchel and Westmoreland again discussed plaintiff's job performance with Moore and he concurred with their decision not to promote plaintiff. Doc. 20 at DA 009-010. So did the District Attorney. Doc. 31 at DA 001. Plaintiff voluntarily resigned on January 18, 2017. Id. at DA 204.

V.

Analysis

To establish a prima facie case of race discrimination, plaintiff must show that: (1) she was not promoted; (2) she was qualified for the position she sought; (3) she fell within a protected class at the time of the failure to promote; and (4)

7

defendant either gave the promotion to someone outside the protected class or otherwise failed to promote plaintiff because of her race. Autry v. Fort Bend Indep. Sch. Dist., 704 F.3d 344, 346-47 (5th Cir. 2013). Once plaintiff has made a prima facie case, defendant has the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action. Id.; Parker v. State of La. Dept. of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). If defendant produces evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the failure to promote plaintiff, she must then offer sufficient evidence to create a genuine issue of material fact that defendant's reason was pretext for race-based discrimination. Price v. Federal Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). Specifically, "plaintiff must substantiate [her] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Id. To carry this burden, plaintiff must produce substantial evidence to rebut each nondiscriminatory reason articulated by defendant. Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 233 (5th Cir. 2015); Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). Alternatively, plaintiff can produce evidence to show that she was clearly better qualified than the person selected for the position.

Churchill v. Texas Dept. of Crim. Justice, 539 F. App'x 315, 318 (5th Cir. 2013); Price, 283 F.3d at 723 (showing that candidates are similarly qualified or that one is merely better qualified does not establish pretext).

As the Fifth Circuit has explained:

> If the plaintiff can show the employer's asserted justification is false, this showing, coupled with a prima facie case, may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 210 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet "no rational factfinder could conclude that the action was discriminatory." Id. Whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Id. at 148-49, 120 S. Ct. 2097.

Price, 283 F.3d at 720.

Substantive analysis of claims under Title VII and the Texas Labor Code is the same. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 n.10 (5th Cir. 2001); Estes v. Thrift Town, No. 3:17-CV-1968-K-BK, 2018 WL 1157787, at *1 n.1 (N.D. Tex. Feb. 7, 2018), adopted, 2018 WL 1122204 (N.D. Tex. Mar. 1, 2018). And, as the Supreme Court of Texas has recently determined, failure of plaintiff to prove the prima facie elements of a discrimination

claim deprives the court of jurisdiction of her state law claim. Alamo Heights Indep. Sch. Dist. v. Clark, 544 S.W.3d 755, 784 (Tex. 2018). That is, the Labor Code only waives immunity from suit when the plaintiff actually states a claim for conduct that would violate the Texas Commission on Human Rights Act. Id. at 783.

Here, defendant says that plaintiff cannot establish that she was qualified for the position she sought. The job qualifications for Attorney II Exempt Grade 73 include as minimum requirements:

> Prior experience in the relevant area of law is preferred. Basic knowledge and ability to apply the applicable laws and procedures is essential. Ability to work efficiently and effectively in high-pressure situations and ability to communicate effectively is required. Attorney is responsible for working in a cooperative manner with support staff and investigators. . . .
> Other requirements: Incumbent must have the ability to work well with others.

Doc. 20 at DA 208. For the reasons explained by plaintiff's supervisors, she was not qualified for promotion and was not promoted. Id. at DA 013-017, 025-027. That plaintiff may have been more experienced than others, as she alleges, see, e.g., Doc. 8 ¶¶ 10, 17, 18; Doc. 43 at PA 106 ¶¶ 8, 11, or received

10

satisfactory performance evaluations[5] of "meets expectations," see, e.g., Doc. 20 at DA 021-022; Doc. 43 at PA 10, does not equate to superior qualifications. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996); Bodenheimer v. PPG Indus., 5 F.3d 955, 959 (5th Cir. 1993). Her conclusory, self-serving affidavit is insufficient to raise a genuine fact issue for trial. DIRECTV, Inc. v. Budden, 420 F.3d 521, 531 & n.49 (5th Cir. 2005); Solorzano v. Shell Chem. Co., 254 F.3d 1082, 2001 WL 564154, at *7 (5th Cir. 2001).

As defendant notes, when the same actor both hires and makes decisions concerning promotion, the "same actor" inference creates a presumption that no discriminatory motive was involved in the decision-making. Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 421-22 (5th Cir. 2009); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996). In this case, the same District Attorney made hiring, promotion, and firing decisions. Doc. 20 at DA 001-003. And, the same actor promoted others of plaintiff's race. Id. at DA 003, 017-018, 030. Likewise, persons of other races whose performance was not satisfactory were not promoted. Id. at DA 027-028.

---

[5]As one prosecutor testified, the performance evaluations were tied to raises, not necessarily promotions. Doc. 43 at PA 62.

Plaintiff counters that the same actor doctrine is inapplicable because the person who hired her did not make the decision not to promote her. Doc. 42 at 4. However, the evidence shows that the same actor did make those decisions. Doc. 20 at DA 001-003. Plaintiff also refers to the "cat's paw" theory pursuant to which the discriminatory animus of a manager can be imputed to the decision-maker if the decision-maker acted as a rubber stamp, or cat's paw, for the manager. Laxton, 333 F.3d at 584. The cat's paw theory only applies, however, if the plaintiff establishes that (1) a co-worker exhibited discriminatory animus, and (2) that same co-worker possessed leverage or exerted influence over the decision-maker so as to cause the decision to be made. Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004). The plaintiff's subjective opinion that her supervisor discriminated against her is not enough to create a genuine issue of material fact. Id. at 654; Keller v. Coastal Bend College, 629 F. App'x 596, 599 (5th Cir. 2016). Where, as here, plaintiff is merely disputing a performance assessment, she has not demonstrated a fact issue as to animus. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002). Accordingly, the cat's paw analysis does not apply and the same actor inference creates a presumption that no discrimination was involved in the failure to promote plaintiff.

Plaintiff argues that the reasons given for the failure to promote her are pretext for discrimination. In particular, she refers to alleged self-contradictory statements of Whelchel and testimony contradicted by other witnesses and to the alleged timing of events. The record does not support these allegations. The timing of events is as recited, supra. Plaintiff tries to make much of another deputy chief saying that Westmoreland informed her that plaintiff's promotion was being reconsidered "because of concerns from recent issues that had arisen." Doc. 43 at PA 100.2. Of course, after recommending her for promotion, Westmoreland and Whelchel learned that plaintiff had not followed up with the defense attorney as instructed and they learned of continuing problems in the court where she was assigned. Doc. 31 at DA 022-23. As for the allegation that Whelchel's story changed at different times, the record reflects that defendant supplemented its summary judgment evidence in response to an affidavit plaintiff initially filed in response to the summary judgment motion.[6] Doc. 26, Ex. E. This is not a case where different reasons were given at different times thus leading to an inference of pretext. The court further notes that the record reflects that defendant did not always document negative

---

[6]Defendant filed its motion for summary judgment on May 22, 2018. Docs. 18, 19, 20. Although plaintiff did not file a proper motion pursuant to Fed. R. Civ. P. 56(d), the court granted plaintiff a lengthy extension of time in which to file her response. Doc. 27.

performance issues, but instead offered encouragement to its employees whenever possible. See, e.g., Doc. 31 at DA 022. That this was defendant's practice does not support the contention that defendant is now fabricating complaints about plaintiff's performance. That former co-workers said nice things about plaintiff does not show that she was discriminated against. That particular documents may not have been produced as plaintiff would have wished is not evidence of discrimination.[7] Nor is the fact that defendant apparently gave plaintiff numerous chances to improve.[8] In sum, the record simply does not support plaintiff's contention that she was the subject of discrimination and no rational factfinder could reach that conclusion.

VI.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing

---

[7] It is not clear what pertinence the documents have to the summary judgment motion. Plaintiff does not give a citation to such documents being in the record. Doc. 42 at 12-13. Plaintiff further complains that defendant's EEOC response was not reviewed by Whelchel. Id. at 13. The pertinence to the motion is not clear.

[8] Plaintiff's argument is that if she was as awful as she is described in the numerous affidavits supporting defendant's motion, she would have been terminated long before she was given an opportunity to resign. She has not cited any authority to support the proposition that defendant's remarkable forbearance should be held against it.

on her claims against defendant; and that such claims be, and are hereby, dismissed.

SIGNED September 7, 2018.

_____
JOHN MCBRYDE
United States District Judge